UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  09-23484-Civ-COOKE/TURNOFF

ANDONISHA EDMUNSON,

    Plaintiff
vs.

AKAL SECURITY, INC.,

    Defendants.
_____/

**AMENDED ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before me on the Defendant's Motion for Summary Judgment (ECF No. 33).  I have reviewed the Parties' arguments, the record, and the relevant legal authorities. For the reasons provided in this Order, the Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND

This is an action to recover damages for violations of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et seq*.  Plaintiff, Adonisha Edmonson,[1] alleges that Defendant, Akal Security, Inc. ("Akal"), discriminated against her based on her race and national origin, and retaliated against her.  Ms. Edmonson is a Black Jamaican female.  Ms. Edmonson worked for Akal since May 10, 2004.  Compl. ¶ 11.  At all material times, she worked as a custody officer at the ICE-Krome Processing Center in Miami, Florida ("Krome facility").  Compl. ¶ 9.  As a custody officer, she was responsible for the care, custody, and control of the detainees at the Krome facility.  Compl. ¶ 10.

---

[1] The caption in Plaintiff's Complaint contained a typographical error in her surname.  Thus, the caption of this case is *Edmunson v. Akal Security, Inc.*, even though Plaintiff's surname is actually spelled Edmonson.

Ms. Edmonson describes three incidents where she alleges Akal discriminated against her and/or retaliated against her. The first involves an internal complaint she filed with Akal after an employee made inappropriate comments to her. The second involves a confrontation with another employee. The third concerns Akal's termination of her employment. I will briefly discuss each incident below.

The Parties agree on all of the following material facts regarding the first incident.[2] Sometime in 2006, Ms. Edmonson filed an internal complaint of discriminatory treatment with Akal Human Resources employee, Jonathan Rhodes. In her internal complaint, Ms. Edmonson claimed that on or about June 12, 2006, Captain Anthony Rosado "scolded" her about her work performance. Mr. Rosado told Ms. Edmonson that she "favored black detainees to Hispanics." Mr. Rosado told Ms. Edmonson that "she should be more like Malpica and all of the others," which she claims was a reference to Hispanic employees. Mr. Rosado also stated that the "male officers did not want to work with her," and that she was a "liability" because "she treated detainees like prisoners due to her Jamaican cop attitude." Finally, Mr. Rosado told Ms. Edmonson not to "take her Jamaican attitude to the detainees." On August 2006, after investigating the internal complaint, Mr. Rhodes sent Ms. Edmonson a letter stating that Akal did not find any substantive evidence to support her allegations. However, to resolve the conflict, Akal reassigned Ms. Edmonson to a different shift, at night. Although Ms. Edmonson disputes that she agreed to the shift change, she does not dispute that she received extra compensation for working that shift and her job duties remained the same.

The Parties also agree on all of the material facts regarding the second incident. On

---

[2] The facts set forth in Defendant's Statement of Undisputed Facts are deemed admitted to the extent that they are supported by evidence in the record, and are not specifically disputed in Plaintiff's opposing statement of facts. S.D. Fla. L.R. 7.5(D); *see also Gossard v. JP Morgan Chase & Co.,* 612 F. Supp. 2d 1242, 1245-1246 (S.D. Fla. 2009).

February 4, 2008, Ms. Edmonson got into a confrontation with another officer, Samuel Bloom, who is White.  During this confrontation, Mr. Bloom called Ms. Edmonson a "bitch," a "fucking bitch," and a "fucking cunt."  Ms. Edmonson responded by stating to Mr. Bloom, "you left your bitch at home," and asked him if he spoke to his wife that way.  Mr. Bloom then slammed his shoulder into Ms. Edmonson's shoulder before walking away.  Ms. Edmonson pushed Mr. Bloom back.  Akal's Project Manager, Balencia Bryant, investigated the incident.  After conducting the investigation, Ms. Bryant recommended the termination of Mr. Bloom's employment, and a five-day suspension with final warning for Ms. Edmonson.  Akal ultimately determined that a five-day suspension with final warning was appropriate for both employees.

The Parties do not agree on all of the facts surrounding Ms. Edmonson's termination on September 30, 2008.  It is undisputed that in 2008 the U.S. government informed Akal that it would not renew its contract for security services at the Krome facility.  Akal's contract with the U.S. government ended on September 30, 2008.  On September 30, 2008, Akal laid off all of its employees at the Krome facility.

At some point in 2008, Akal entered into a joint venture with Doyon Security Services, LLC ("Doyon").  Doyon was a majority owner of the joint venture; Akal was a minority owner.  The U.S. government awarded the Krome contract to the Akal-Doyon joint venture, effective October 1, 2008.[3]

## II. LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[3] Ms. Edmonson alleges several facts regarding Doyon's failure to hire her in October 2008.  Doyon is not a party to this case.  Ms. Edmonson asserts discrimination and retaliation claims against Akal on the basis that "Defendant discriminated against Plaintiff and terminated her employment because Plaintiff complained about the sexual harassment, discriminatory treatment, and the altercation between herself and Officer Bloom."  Compl. ¶ 27.  Because the facts surrounding Doyon's decision not to hire Ms.

3

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U .S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### III. ANALYSIS

#### A. Discrimination Claims based on Race and National Origin

##### 1. *Time-Barred Allegations*

At the outset, I will address Akal's argument that certain of Ms. Edmonson's factual allegations are time-barred under Fla. Stat. 760.11. Any person alleging a violation of Fla. Stat.

---

Edmonson are irrelevant to her present claims, I will not recite them in this Order.

§ 760.10 must file a complaint with the Florida Commission on Human Relations or the Equal Employment Opportunity Commission ("EEOC") within 365 days of the alleged violation to preserve the claim. Fla. Stat. § 760.11. Thus, any violation occurring outside of this 365-day period is time-barred. *See, e.g.*, *Matthews v. City of Gulfport*, 72 F. Supp. 2d 1328, 1334 (M.D. Fla. 1999); *Clarke v. Winn-Dixie Stores, Inc.*, No. 06-61886-Civ-Moreno, 2007 WL 3011018, at *3 (S.D. Fla. Oct. 12, 2007).

An otherwise time-barred claim may be "revived" under the continuing violation doctrine if it is a "part of a pattern or continuing practice out of which the timely-filed incident arose." *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793, 799-800 (11th Cir. 1988). The continuing violation doctrine, however, "does not exist to give a second chance to an employee who allowed a legitimate [discrimination] claim to lapse." *Id*. at 800. Thus, in analyzing whether this doctrine applies, a court should look to whether the otherwise time-barred claim is related to the timely claim in (1) subject matter, (2) frequency, and (3) permanence. *Id*. at 800. As to the first factor, the court should determine "whether the alleged acts involve the same type of discrimination, which would connect them in a continuing violation." *Matthews*, 72 F. Supp. 2d at 1334. As to the second factor, the court must determine "the frequency of the incidents and whether the acts are recurring or more likely isolated incidents." *Id*. The third factor, which is the most important of the three, assesses "whether the degree of permanence was enough to alert an employee that she should assert her rights." *Id*.

Ms. Edmonson filed a charge of discrimination with the EEOC on July 2, 2008. Thus, any violation that occurred before July 2, 2007, is time-barred, unless the continuing violation doctrine applies.[4] Ms. Edmonson accuses the following employees of racial and national origin

---

[4] Ms. Edmonson's EEOC charge of discrimination cited Title VII, rather than the FCRA, as the basis for the complaint. A plaintiff alleging discrimination under Title VII must file a complaint with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000-5(e). I need not decide

5

discrimination: (i) Officer Samuel Bloom; (ii) Captain Anthony Rosado; (iii) Project Manager Joseph Colon, and (iv) HR employee Gabriel Montoya. Edmonson Dep. 83:12-85:18. Ms. Edmonson accuses Project Manager Balencia Bryant of national origin discrimination only. *Id*.

Officer Bloom

Ms. Edmonson makes the following allegations against Mr. Bloom: (i) in April 2005, he asked her if she was a "fucking stiff" when she lost her company radio; (ii) in April 2005, he called her a "Jamaican bitch" as she walked by; (iii) twice in June 2005, he called her "some fucking Jamaican bitch"; (iv) at some point in 2007, he told her "you didn't get fucked" as she walked by; (v) at some point in 2007, he said, "go find your own key, bitch," when she asked for keys; (vi) several times in 2007, he called her a "bitch" on the phone; and (vii) the February 2008 confrontation. Def.'s Statement of Facts E.1.2. It is undisputed that no further confrontations occurred after February 2008. The Parties agree that the February 2008 claim is timely. I will analyze whether Ms. Edmonson's earlier factual allegations are connected to the February 2008 incident as a continuing violation.[5]

Mr. Bloom's offensive comments consist of personal insults, which are consistent with respect to the subject matter and words used. According to the undisputed facts, Mr. Bloom made such comments with regular frequency. Despite the fact that Mr. Bloom made several explicit and offensive comments related to her national origin—calling her a "Jamaican bitch" on at least three occasions in 2005—Ms. Edmonson did not file a claim. The incidents occurred with a sufficient degree of permanence that Ms. Edmonson should have been prompted to assert her rights. Thus, all of the allegations she makes about Mr. Bloom prior to July 2, 2007, though certainly offensive and actionable had they been raised in a timely manner, are time-barred, and I

---

which statute of limitations applies here because the result would be the same regardless.
[5] Ms. Edmonson alleges three incidents occurred "at some point in 2007." However, she fails to provide any evidence in her Response in Opposition to establish that these incidents occurred within the statutory

will not consider them in my analysis. *See Roberts*, 835 F.2d at 801 ("A claim arising out of an injury which is "continuing" only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar . . . ."); *Dumas v. Town of Mount Vernon, Ala.*, 612 F.2d 974, 978 (5th Cir. 1980) ("The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring.").

<u>Captain Rosado</u>

Ms. Edmonson claims Mr. Rosado made the following inappropriate comments to her in 2006: (i) in May 2006, he said that men did not want to work with her, and asked her why she could not be more like her co-worker, Malpica; (ii) in June 2006, he again asked her why she could not be more like Malpica; (iii) in July 2006, he accused her of being belligerent and disrespectful; (iv) in July 2006, he accused her of being responsible for a complaint by an attorney who was unable to visit a detainee; (v) in July 2006, he called her a smart ass, and said he was going to get her fired because he was tired of her "Jamaican attitude"; (vi) at some point Mr. Rosado stated, "what's wrong with you Jamaicans" and "you Jamaicans have attitude"; and (vii) at some point Mr. Rosado rubbed his thigh against her, stroked her arm, and said, "what's wrong with you Jamaican women."[6] Def.'s Statement of Facts E.1.4. It is undisputed that all of these incidents occurred before Ms. Edmonson filed her July 2006 internal complaint with Akal. *Id*. E.1.5.

Several of Mr. Rosado's offensive comments referring to Ms. Edmonson's national origin are consistent as to the subject matter and words used. However, as to comments (vi) and (vii), Ms. Edmonson provides no evidence to establish exactly when Mr. Rosado made the comments, although it is undisputed that he made them before July 2006. *See Anderson*, 477

---

time-period.

7

U.S. at 252 (holding a non-moving party cannot defeat summary judgment by showing nothing more than a "mere scintilla of evidence"). Because Ms. Edmonson cannot establish when Mr. Rosado made those later comments, she does not satisfy the second element of the test for a continuing violation—that Mr. Rosado made comments about her national origin with regular frequency. Thus, all of the allegations she makes about Mr. Rosado prior to July 2, 2007, though certainly offensive and actionable had they been raised in a timely manner, are time-barred, and I will not consider them in my analysis. *See Roberts*, 835 F.2d at 801; *Dumas*, 612 F.2d at 978.

<u>Project Manager Colon, HR Employee Montoya, and Project Manager Bryant</u>

Ms. Edmonson claims that Mr. Colon discriminated against her because he (i) refused to investigate her July 2006 complaint about Mr. Rosado, (ii) transferred her to the night shift in August 2006; (iii) refused to investigate a harassment complaint Mr. Bloom made against Ms. Edmonson; and (iv) refused to speak to her about Mr. Bloom's harassment complaint. Def.'s Statement of Facts E.1.6.

There is no evidence that Mr. Colon refused to investigate Ms. Edmonson's July 2006 complaint about Mr. Rosado. The evidence establishes that Mr. Colon assisted Mr. Rhodes in investigating the internal complaint. Additionally, the evidence indicates that Mr. Rhodes made the decision to transfer Ms. Edmonson to the night shift, not Mr. Colon. In any case, these actions do not establish that Mr. Colon engaged in a "pattern or continuing practice out of which the timely-filed incident arose." Mr. Colon's involvement in the facts that led to Ms. Edmonson's suspension and termination is tangential, at best. His actions do not satisfy the test to show a continuing violation.

Mr. Colon's actions in investigating Mr. Bloom's harassment claim against Ms. Edmonson are timely because the February 2008 incident occurred within the statutory time

period. The continuing violation doctrine need not be invoked as to this allegation. For the same reason, Ms. Edmonson's accusations with respect to Mr. Montoya's and Ms. Bryant's handling of the February 2008 investigation are timely.

### 2. *Analysis of Timely Allegations*

The Florida Civil Rights Act provides that it is unlawful for an employer to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a).

In an employment discrimination case,[7] the plaintiff bears the ultimate burden of proving intentional discrimination. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). To defeat a motion for summary judgment, a plaintiff must establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting statistical proof; or (3) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). Ms. Edmonson does not present any statistical proof of disparate treatment.

Direct evidence is "evidence that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations omitted). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct

---

[7] Plaintiff's Complaint alleges violations of the Florida Civil Rights Act. "[D]ecisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1283, 1387 (11th Cir. 1998). I may therefore consider decisions applying and interpreting Title VII in analyzing the claims in this case.

9

evidence of discrimination." *Id.* (internal quotations omitted).

Ms. Edmonson does not present direct evidence of discriminatory intent with regard to the February 4, 2008 incident. Mr. Bloom's comments and conduct toward Ms. Edmonson, although extremely offensive, do not demonstrate discrimination based on race or national origin. As direct evidence, Ms. Edmonson points to e-mails between Ms. Bryant and Mr. Montoya, where Ms. Bryant states that she is "following up on the hair color issue, Edmonson, and Bloom DRTs," and that she will have a meeting with the Union "and I know that issue (hair) will come up." ECF No. 37-1. Ms. Edmonson states that the reference to "hair" is a way to "camouflage the topic of discrimination." Pl.'s Opp. 3. As Ms. Edmonson did not depose Ms. Bryant during discovery, there is no further evidence to bolster Ms. Edmonson's allegation that "hair" is a code word for race. Although the references to "hair" are admittedly cryptic, they do not rise to the level of blatant remarks demonstrating discriminatory intent.

Similarly, Ms. Edmonson does not present direct evidence of discriminatory intent with regard to her termination. As direct evidence, Ms. Edmonson points to Mr. Durham's admission that he told Akal that he considered Ms. Edmonson a "problem child." First, Ms. Durham made this remark to Doyon *after* Ms. Edmonson's termination. Second, this reference is not the kind of "blatant remark" whose intent could mean nothing other than to discriminate based on race or national origin. In fact, in his affidavit, Mr. Durham clarified that he believed Ms. Edmonson was a "problem child" based on negative interactions that he had with her and his knowledge that she had a history of disciplinary actions because of her difficulty to get along with her co-workers. Durham Aff. ¶ 18.

As Ms. Edmonson provides no direct evidence or statistical proof of discrimination, I will analyze her claims under the *McDonnell Douglas* framework. Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of employment discrimination, by showing: (1) she

belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably; and (4) she is qualified to do the job. *Holifield*, 115 F.3d at 1562 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). To make a comparison of the plaintiff's treatment to that of an employee outside her protected class, "the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Id*. An employee is similarly situated for purposes of establishing a prima facie case, when the employee is "involved in or accused of the same or similar conduct and [is] disciplined in different ways." *Id*. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id*.

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Wilson*, 376 F.3d at 1087. If the employer articulates one or more such reasons, "the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Id*. at 1088.

Ms. Edmonson establishes the first two prongs of the *McDonnell Douglas* test. Akal does not dispute that Ms. Edmonson belongs to a protected class—she is Black and Jamaican. Akal subjected her to two adverse employment actions—in February 2008, Akal suspended her for five days with a final warning, and in September 2008, Akal terminated her.

        a.  <u>February 2008 Incident Resulting in Suspension</u>

With respect to the February 2008 incident, Ms. Edmonson identifies Mr. Bloom, who is White and not Jamaican, as a similarly situated employee. Pl.'s Opp. 4. Indeed, the undisputed facts indicate that the employees are similarly situated. Both employees engaged in similar conduct—during the February 2008 confrontation, they both made offensive remarks to each

11

other and physically touched each other.

The third prong of the test requires Ms. Edmonson to show that Akal treated a similarly situated employee more favorably. Ms. Edmonson and Mr. Bloom, however, received the same treatment—both received a five-day suspension with final warning. Thus, Akal did not treat Mr. Bloom more favorably. Ms. Edmonson fails to establish a prima facie case of discrimination.

Although the arguments in her Response in Opposition are unclear on this point, Ms. Edmonson appears to make an alternate argument that Akal treated Mr. Bloom more favorably because Ms. Bryant originally recommended that Mr. Bloom be terminated, but Akal ultimately decided to give him a five-day suspension with final warning. Pl.'s Opp. 4. Ms. Edmonson does not cite any case where a court has held that a plaintiff satisfies the third element of the *McDonnell Douglas* test by showing that her employer considered harsher punishment for a similarly situated employee before deciding to give the same punishment to both employees. Moreover, the fact that Akal considered terminating Mr. Bloom before deciding to suspend him is not indicative of discriminatory intent. *See Mizell v. Miami-Dade Cnty., Fla.*, 342 F. Supp. 2d 1084, 1095 (S.D. Fla. 2004), *aff'd* 147 Fed. Appx. 871 (11th Cir. 2005) (noting that employer's decision to not follow recommendation to terminate White employee was not evidence of discrimination against Black employee: "Title VII does not take away the [employer's] right to make determinations as it sees fit under its rules."). Summary judgment is granted in favor of Akal with respect to Ms. Edmonson's race and national origin discrimination claims based on her five-day suspension with final warning.

      b. <u>September 30, 2008 Termination</u>

With respect to her September 30, 2008 termination, Ms. Edmonson does not present any evidence or develop any arguments in her Opposition to support the claim that Akal terminated her because of discrimination based on race and national origin. Most notably, Ms. Edmonson

12

does not identify any similarly situated employee outside of a protected class who received more favorable treatment, i.e., a similarly situated non-minority employee who Akal did not terminate at the Krome facility. Akal presents evidence that it laid off all of the employees who worked at the Krome facility because it lost its government contract. Ms. Edmonson fails to satisfy the third element of the *McDonnell Douglas* test. Summary judgment is granted in favor of Akal with respect to Ms. Edmonson's race and national origin discrimination claims based on her termination.

### B. Retaliation Claim

An employer may not retaliate against an employee "who has opposed what she believes to be unlawful discrimination." *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989); *see* Fla. Stat. § 760.10. A plaintiff establishes a prima facie case of retaliation by showing: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Holifield*, 115 F.3d at 1566.

A plaintiff does not need to prove the underlying claim of discrimination, which led to her complaint. *Tipton*, 872 F.2d at 1494. Instead, the plaintiff's activity is protected "if she could reasonably form a good faith belief that discrimination in fact existed." *Id*. A plaintiff meets the causal link requirement by proving that "the protected activity and the negative employment action are not completely unrelated." *Holifield*, 115 F.3d at 1566. The plaintiff must also show that the employer was "actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff." *Id*.

If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate "a legitimate non-discriminatory reason for the adverse employment action." *Id*. If the employer does so, the plaintiff must then demonstrate that "the employer's proffered explanation is a

13

pretext for retaliation." *Holifield*, 115 F.3d at 1566.

Ms. Edmonson claims that Akal suspended her for five days with final warning in retaliation for her internal complaint on February 5, 2008, about Mr. Bloom's conduct. Pl.'s Opp. 5. The incident report she filled out demonstrates that she had a good faith belief that Mr. Bloom's conduct constituted discrimination based on sex. Incident Report, ECF No. 1, at 25. Ms. Edmonson therefore meets the first element of a prima facie case of retaliation. Ms. Edmonson's suspension with final warning qualifies as an adverse employment action. Ms. Edmonson therefore meets the second element of a prima facie case of discrimination.

As to the third element of a prima facie case of discrimination—a causal link between the protected activity and the adverse action—Ms. Edmonson points to the two-week temporal proximity between the February 5, 2008 complaint and the February 20, 2008 adverse employment action. Close temporal proximity "may support a finding of a causal connection." *Wascura v. City of So. Miami*, 257 F.2d 1238, 1244-45 (11th Cir. 2001).

Having made out a prima facie case for retaliation, the burden shifts to Akal to articulate a legitimate, non-discriminatory reason for Ms. Edmonson's suspension. Defendant provides Ms. Janet Gunn's affidavit as evidence of a legitimate non-discriminatory reason for suspending Ms. Edmonson. Ms. Gunn is Vice-President of Human Resources at Akal. She avers that Akal determined, after an investigation of the incident between Ms. Edmonson and Mr. Bloom, that both employees engaged in inappropriate and unacceptable conduct, which included profanity and physical touching. Gunn Aff. ¶¶ 13-15. Based on this finding, Akal determined that both employees should be suspended for five days with final warning. *Id*. I find that Akal has met its burden to articulate a legitimate non-discriminatory reason for Ms. Edmonson's suspension.

The burden therefore shifts back to Plaintiff to demonstrate that Akal's proffered explanation is a pretext for retaliation. "Once the employer meets its burden to produce a non-

14

discriminatory reason for its actions, the presumption of discrimination is eliminated." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). "To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Id*. "This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Id*. Reading Plaintiff's present Motion together with her Opposition brief on summary judgment, it appears that Plaintiff argues, at most, that the close temporal proximity of the events along with unspecified "discriminatory treatment" establishes pretext.[8] Close temporal proximity, by itself, does not show that a defendant's articulated reasons for termination are pretextual. *Wascura*, 257 F.3d at 1245 (upholding dismissal on summary judgment because plaintiff failed to provide sufficient evidence of pretext). Plaintiff does not point this Court to any specific piece of evidence that creates a genuine issue of material fact that Akal's proffered reason for the suspension was pretextual. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("[T]he nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." (internal quotations omitted)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (the nonmoving party "may not rest upon the mere allegations or

---

[8] Plaintiff makes a general statement that "the approx. 2 week temporal proximity between the February 5, 2008 complaint with good faith belief of discrimination based on sex, on the one hand, and the February 20, 2008 adverse employment action of a 5-day suspension with final warning, on the other hand, show a prima facie case of Retaliation for which Defendant lacks any non-pretextual legitimate basis." Pl.'s Mot. 5. In her Opposition brief, Ms. Edmonson argues that the close temporal proximity of the events, "particularly in light of the abovementioned discriminatory treatment by Akal against Ms. Edmonson," establish a prima facie case of retaliation. Pl.'s Opp. to Mot. Summary Judgment 5. It is unclear, from a review of the Plaintiff's Opposition brief, what facts specifically constitute the "abovementioned discriminatory treatment" to which Plaintiff refers.

denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial" (internal quotations omitted)). Summary judgment is granted in favor of Akal on Plaintiff's retaliation claim based on her five-day suspension with final warning.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED**.

2. The Plaintiff's Complaint is **DISMISSED**.

3. The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida, this 2nd day of June 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*